Filed 11/19/24  N.B. v. Superior Court CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| N.B.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>    Respondent;<br><br>SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B339537<br>(Super. Ct. No. 23JD-00216-002)<br>(San Luis Obispo County) |

Mother of a minor child petitions for an extraordinary writ challenging the juvenile court's order terminating reunification

services and setting the matter for a hearing pursuant to Welfare and Institutions Code section 366.26.[1]  We deny the petition.

FACTS

In 2023, N.B. (Mother) was living with her children J.B. and G.B.[2]  At the time, J.B. was 15 years old.  He has autism and is legally blind.  G.B. was then two years old and suffers from a number of serious medical conditions including: needing a gastronomy tube (G-tube) for feeding, hearing loss, seizures, perinatal stroke, and aspiration-reflux.

In July 2023, J.B. was psychiatrically hospitalized and subsequently released to Mother's custody.  A mental health nurse and law enforcement officers went to Mother's house because J.B. had not picked up his medication.  They found the home to be unsafe and unsanitary.  They learned that G.B. recently had an infection in his G-tube that caused it to burst in his abdomen.

San Luis Obispo County Department of Social Services (DSS) visited Mother's home and found it filthy with trash and blocked walkways throughout.  Mother and J.B. had physical altercations for which Mother blamed J.B.  She accused J.B. of threatening G.B.  A male friend of Mother, R.S., threatened J.B. with weapons at least twice.  DSS learned from service providers that Mother had a history of not following through on her children's medical needs.

DSS detained the children and took G.B. to the doctor. G.B. had red bumps on his body, open sores on his buttocks and back, a healing sore on his arm, yellowing skin and matted hair.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Mother's writ petition only concerns G.B.

He was dehydrated and lethargic.  DSS learned that G.B. had not been given his prescribed medications in months and had not been to follow-up medical appointments in the past year.

DSS placed the children in separate homes.  G.B. was placed in a home with foster parents specially trained to meet his needs.

DSS filed a dependency petition for J.B. and G.B pursuant to section 300, subdivisions (a) and (b), the child has suffered or there is a substantial risk the child will suffer serious physical harm, and the child's parent is unable to adequately protect or provide for the child.  The juvenile court ordered the children detained.

### Jurisdiction and Disposition

The juvenile court held a combined jurisdictional and dispositional hearing.  DSS provided additional information.

DSS had been involved with the family on numerous prior occasions.  The problems included verbal and physical altercations between Mother and J.B., threats against J.B. from R.S., physical abuse of J.B. by another male friend of Mother, and Mother's failure to follow-up on her children's medical and special needs appointments.  In addition, Mother had a history of narcotics, methamphetamine, and weapons charges.

The juvenile court sustained DSS's petition, ordered the children to remain in foster care, and ordered reunification services for Mother.

### Six-Month Review

Mother was struggling with sobriety.  Mother was referred to Drug and Alcohol Services, but only minimally participated in the program.  She either missed drug tests or tested positively for methamphetamine.  Mother became homeless, was not working,

and was not engaged in mental health services. Mother refused homeless services.

Mother was granted supervised visits with G.B. But she was often late and spent significant time watching things with G.B. on her phone instead of interacting with him. G.B. frequently became dysregulated during the visits and Mother struggled to calm him down. Mother missed numerous medical appointments with G.B.

A DSS social worker testified at the hearing. The social worker testified that returning G.B. to Mother would be detrimental to him. Mother demonstrated a lack of attention to G.B.'s needs for appointments and services. The extension of reunification services would not help because there was too much for Mother to learn and too little time. Mother was not referred to parenting class because she needed to address her sobriety and mental health first.

Both DSS's counsel and G.B.'s counsel recommended that reunification services be terminated for G.B. and the matter be set for hearing pursuant to section 366.26.

### Ruling

The juvenile court found that G.B. could not be safely returned to Mother; that further reunification services were not warranted; and that it is in G.B.'s best interest to terminate reunification services. The court terminated services as to G.B. and set a section 366.26 hearing.

### DISCUSSION

The basis for Mother's challenge to the juvenile court's order setting a section 366.26 hearing is not clear. The most charitable view is that she is challenging the sufficiency of the evidence.

4

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (*McIntyre v. Doe & Roe* (1954) 125 Cal.App.2d 285, 287.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

G.B. has a number of serious medical conditions that require attention. Mother has demonstrated that she is incapable of providing the care G.B. needs. Mother has substance abuse and mental health problems that she has failed to address in a meaningful way. When DSS took custody of G.B., he had a rash and sores and was dehydrated and lethargic, indicating he had been neglected. Mother had not given G.B. his prescribed medication in months and failed to take G.B. to follow-up medical appointments.

When Mother was offered services, her participation was minimal. She either refused to take drug tests or failed them. Mother was often late to visit G.B. and failed to interact with him during the visit. She missed many of G.B.'s medical appointments. When Mother became homeless, she refused homeless services. Mother's conduct showed that extending reunification services would be futile.

G.B.'s medical conditions would present a challenge even to the best parent. Mother has too many deficits to be able to meet that challenge, and there is no reasonable probability Mother will

5

be able to resolve those deficits in a timely manner.  The juvenile court was well within its discretion in terminating services and setting the matter for a section 366.26 hearing.

DISPOSITION

The petition for an extraordinary writ is denied.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


BALTODANO, J.

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____

N.B., in pro. per, for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, and Vincent M. Uberti, Deputy County Counsel, for Real Party in Interest.